43656. BLACKBURN v. BUCHWALD.
(351 SE2d 446)

SMITH, Justice.

A Fulton County jury set aside a security deed in favor of the appellant, T. E. (Gene) Blackburn, on the ground that Gene Blackburn and his son, Donald, had acted fraudulently toward Donald's former wife, the former Barbara Blackburn, now Buchwald. Gene Blackburn raises six issues in his appeal. We reverse.

In 1971, Donald Blackburn borrowed $8,000 from his father to use in the purchase of a home. He gave his father a promissory note and a security deed to the property. Barbara Buchwald, his wife at the time, did not sign the note or the deed.

In 1973, Gene learned that Donald and Barbara were getting a divorce. When he subsequently attempted to record the security deed to their marital residence, he discovered that he had used the wrong form. His son gave him another security deed which he recorded on

November 13, 1973.

On November 15, 1973, Donald and Barbara signed a final settlement agreement in which he agreed to give her a warranty deed to the house. At that time, he gave her a quitclaim deed which she accepted and filed through her attorney. Their divorce became final five months after the signing of the agreement.

During the divorce proceedings, Barbara was represented by legal counsel, while Donald was not. According to Barbara, Donald told her attorney during negotiations that there were no liens against the house except for the first mortgage held by Southwestern Life, and that he would assume payments on the promissory note. She testified at trial that she did not learn of the security deed until much later.

After the divorce, Donald fell behind on child support payments and left the state. During the following years, Gene paid child care expenses for Donald and Barbara's daughter, his granddaughter. At one point, he also paid three months of first mortgage payments for Barbara. Between the divorce and 1976, Gene did not request and did not receive any payments from Barbara on the $8,000 note.

In 1976, Gene asked Barbara to give him a new promissory note on the $8,000 debt and the accrued interest. He said that he would foreclose on the security deed if she did not give him a new note. She testified that this constituted her first awareness of the security deed.

Donald, who at that time was hitchhiking in Ohio, called Barbara and told her that he would speak to his father about the disagreement over the security deed. Following that conversation, she did not hear from Gene about the security deed until 1982, when she received another letter from the elder Blackburn demanding payment. Barbara testified at trial that both demands for payment on the part of Gene Blackburn followed her instigation of legal action against Donald Blackburn.

Barbara subsequently filed a lawsuit against Donald and his parents seeking to set aside the security deed on the ground of fraud, and seeking relief of various sorts in a number of other counts. Donald's parents filed a counterclaim. Prior to trial, the parties reduced the issues to the question of fraud by Gene and Donald Blackburn in the procurement and subsequent use of the security deed. Finding fraud on the part of Gene and Donald Blackburn, the jury set aside the security deed. Gene alone appeals.

1. Gene Blackburn contends that the conveyance of the security deed from Donald to him and his recording of the deed did not constitute a fraudulent conveyance as to Barbara.

Barbara presented no evidence that Gene attempted to prevent her from discovering the security deed. He, in fact, recorded the deed, putting her on constructive notice of the deed before she signed the separation agreement and took the quitclaim deed from Donald, ac-

quiring an interest in the property. The first time that she had title to the house searched, her attorney discovered the security deed.

In *Archer v. Kelley*, 194 Ga. 117, 127 (21 SE2d 51) (1942), we held: "The purpose of the recording statute is to protect against the negligent." The statute accomplishes this by encouraging the diligent. Once Gene recorded his deed, he had no duty to call or write Barbara and inform her of it. Barbara or her attorney, through a brief title search, could have learned the steps necessary to acquire a clear title from Donald.

2. Not only did her lack of diligence prevent her from discovering the security deed; such lack of diligence also bars any claim of fraud that she wishes to assert against Gene, in light of the absence here of any evidence that Gene frustrated her attempts to exercise diligence. *Hubert v. Beale Roofing, Inc.*, 158 Ga. App. 145 (279 SE2d 336) (1981).[1] The trial court, thus, should have granted Gene's motion for a directed verdict.

*Judgment reversed. All the Justices concur, except Weltner, J., who dissents.*

DECIDED JANUARY 9, 1987.

*Kessler & Sparks, Michael A. Kessler, Steward A. Sparks III,* for appellant.
*Rosenbluth, Kahn & White, Matthew J. Blender,* for appellee.

---

[1] This case differs from *Scoggins v. Puckett*, 219 Ga. 282 (133 SE2d 17) (1963), in that here, there is virtually no evidence of an attempt to exercise diligence. In fact, the first exercise of diligence disclosed the security deed. In addition, there was no evidence that Gene, unlike Donald, attempted to frustrate Barbara's attempt to exercise diligence.